# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARJORIE MARY ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-4977** |
| **PATRICIA BRISTER ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment on Qualified Immunity (Doc. 78). For the following reasons, the Motion is GRANTED.

## BACKGROUND

This litigation arises out of a dispute between neighbors rivaled only by that of the Hatfields and the McCoys. The neighbors, Allison and Scott Sortor and Plaintiffs Marjorie and Cameron Mary, own adjacent parcels of land in the upscale neighborhood of Beau Chene in Mandeville, Louisiana. When the Marys purchased their home, it was bordered only by a vacant lot onto which their property and surrounding properties drained. In September 2011, the

1

Sortors purchased the vacant lot, and Stephen Ploue Construction Co. ("Ploue") began construction of the Sortor's home. Before beginning construction, the lot had to be graded and filled. Ploue worked with the St. Tammany Parish Government to obtain the necessary approval for a fill plan. Plaintiffs allege that in approving the Sortor's fill plan, government officials failed to enforce St. Tammany Code of Ordinances Chapter 7 Article I Section 7-002.00 (the "Net Fill Ordinance"). Plaintiffs allege that the fill added to the Sortors' property in violation of the Net Fill Ordinance changed the natural drainage of their property and caused it damage. On March 15, 2013, the Marys brought suit against the Sortors and Ploue in state court. That suit remains ongoing.

Thereafter, on May 16, 2017, Plaintiffs brought a § 1983 suit in this Court against various St. Tammany Parish government officials, both in their official and individual capacities: Patricia Brister, Parish President; Gina Campo, Director of Departments and Second Deputy Chief Administrative Officer; Kelly Rabalais, Executive Counsel; Charles Williams, Director of Engineering; and Paul Carroll, drainage engineer. Plaintiffs allege that Defendants violated their rights to equal protection by treating them differently than similarly situated persons in their enforcement of the Net Fill Ordinance. On July 30, 2018, Defendants moved for a finding of qualified immunity on Plaintiffs' equal protection claims against Defendants in their individual capacities.

Thereafter, Plaintiffs filed a First Amended Complaint adding claims against Defendants under § 1983 for violations of their substantive due process rights and First Amendment retaliation. They allege that Defendants retaliated against them for exercising their constitutional right to bring the

state court lawsuit by blocking consideration of a Code Enforcement complaint that they filed with the Parish in September 2017. In response to these amendments, Defendants supplemented their Motion for Summary Judgment seeking a finding of qualified immunity on Plaintiffs' First Amendment retaliation claims. Defendants have not moved for qualified immunity on Plaintiffs' substantive due process claims. Plaintiffs oppose.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

Defendants move for summary judgment, arguing that they are entitled to qualified immunity on Plaintiffs' § 1983 claims against them in their individual capacities. Qualified immunity serves to "shield[] government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[9] "Once a defendant raises the defense of qualified immunity, 'the

---

[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[9] Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012).

burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'"[10]

In *Saucier v. Katz*, the Supreme Court promulgated a two-step analysis to determine if an official has stepped outside the bounds of qualified immunity.[11] Under that test, the initial inquiry is whether the Plaintiff has alleged a constitutional violation.[12] If established, the next inquiry is whether the defendant's conduct was objectively reasonable in light of clearly established law at the time the conduct occurred.[13] This Court will consider this inquiry in light of both Plaintiffs' equal protection and First Amendment retaliation claims.

### A. Equal Protection Claim

Defendants argue that Plaintiffs cannot satisfy the first step of the qualified immunity analysis, that is, they cannot prove a constitutional violation in support of their equal protection claim. "[T]he equal protection rights of an individual, independent of membership in a suspect class, can be violated by unequal treatment by the government."[14] "It is well established that [a] violation of equal protection occurs only when the government treats someone differently than others similarly situated."[15] Plaintiffs bring a "class of one" equal protection claim. The Fifth Circuit recognizes three different types of "class of one" claims: "selective enforcement;" "personal

---

[10] Harris v. Serpas, 745 f.3d 767 (5th Cir. 2014) (quoting *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008)).
[11] 533 U.S. 194, 201 (2001).
[12] *Id.*
[13] *Id.*
[14] Shipp v. McMahon, 54 F. App'x 413 (5th Cir. 2002).
[15] Bush v. City of Gulfport, Miss., 454 F. App'x 270, 280 (5th Cir. 2011).

vindictiveness;" and adverse zoning permit decisions, and each has different requirements of proof.[16] The threshold question then is which type of equal protection claim Plaintiffs bring. Defendants argue Plaintiffs' claim is a selective enforcement "class of one" claim, while Plaintiffs argue that they bring a land use and permitting claim.

Plaintiffs rely on *Mikeska v. City of Galveston* to argue that because their claim involves a zoning and permitting decision, it is more akin to a land use and permitting claim than a selective enforcement claim. In *Mikeska*, the Fifth Circuit held that the plaintiffs had stated a land use and permitting "class of one" equal protection claim where they complained that the defendant had denied them permits and cut off the utilities to their home when it had not taken these actions against similarly situated homes.[17] Likewise, the Fifth Circuit in *Lindquist v. City of Pasadena, Tex* held that the plaintiffs had stated a land use and permitting claim when they alleged that "the city council refused to grant them a used car dealer license while granting licenses to others similarly situated."[18]

The Court finds Plaintiffs' reliance on this case law troubling because, unlike in *Mikeska* and *Lindquist*, Plaintiffs are not seeking a zoning permit or license. Rather, they are the neighbors of the party that sought the permit at issue. Further, there is no allegation that any permit was denied. Rather, Plaintiffs complain that Defendants failed to properly enforce the Parish's ordinances in approving a fill plan. Stated differently, Plaintiffs' claim is that

---

[16] See Evergreen Flying Servs., Inc. v. Town of Rayville, No. CV 15-2574, 2016 WL 2940085, at *6 (W.D. La. Feb. 16, 2016).
[17] Mikeska v. City of Galveston, 451 F.3d 376, 381 (5th Cir. 2006)
[18] Lindquist v. City of Pasadena, Tex., 525 F.3d 383, 386 (5th Cir. 2008)

Defendants chose to selectively enforce the Net Fill Ordinance by allowing the Sorters to add fill in violation of the ordinance (and where the ordinance was enforced in other similar situations).[19] The facts here are therefore more akin to those in *Horton v. City of Smithville*.[20] In *Horton*, the plaintiffs brought an equal protection claim against the City after their neighbors, with the participation and encouragement of the City, hosted a live music event in violation of zoning ordinances. In the per curiam opinion, the Fifth Circuit held that the plaintiff's equal protection claim sounded in selective enforcement.[21]

This Court holds then that Plaintiffs' equal protection claim likewise sounds in selective enforcement. To succeed on a "class of one" selective enforcement equal protection claim, Plaintiffs must show (1) that they were intentionally treated differently from others similarly situated, (2) that there is no rational basis for the difference in treatment,[22] and (3) that the "government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right."[23] Defendants allege that Plaintiffs cannot succeed on any of these prongs. Because this Court finds that Plaintiffs cannot succeed on the third prong, it need not address the others.

---

[19] *See* Bryan v. City of Madison, Miss., 213 F.3d 267, 277 (5th Cir. 2000) (holding that claim sounded in selective enforcement when argument was that they mayor was "selectively using her powers against a single party").

[20] Horton v. City of Smithville, 117 F. App'x 345, 348 (5th Cir. 2004).

[21] *Id.*; *see also* Smith v. City of Picayune, 795 F.2d 482, 487 (5th Cir. 1986) (holding that where plaintiff complained that the zoning of his neighbor's property violated zoning laws, "a violation of state law by a state agency or actor does not constitute a denial of equal protection unless the state acts with some kind of prohibited class-based animus.").

[22] Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

[23] *Bryan.*, 213 F.3d at 277.

To prove the third prong of improper animus, "it must be shown that the selective enforcement was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."[24] Plaintiffs have not shown this. Plaintiffs assert that Defendant Paul Carroll lied and misled Plaintiffs regarding the fill on their neighbors' property to cover up his own mistake in erroneously approving the fill plan and save himself professional embarrassment or negative employment consequences. They allege that such an improper motive is sufficient to satisfy this prong. Even assuming these facts are true, however, they do not show that Defendants treated Plaintiffs differently because of their race, religion, or other arbitrary classification. Accordingly, Plaintiffs have not created a material issue of fact as to this prong and cannot establish a constitutional violation. Because Plaintiffs have failed to establish an equal protection claim, "we need not address the second prong (defendants' objective reasonableness) for qualified-immunity analysis."[25] Defendants are entitled to qualified immunity on Plaintiffs' equal protection claims against them in their individual capacities.

**B. First Amendment Retaliation**

In their First Amended Complaint, Plaintiffs added a claim for First Amendment Retaliation. Plaintiffs' allege that Defendants Brister, Campo, and Rabalias retaliated against them for exercising their constitutional right to bring the state court lawsuit against the Parish by blocking consideration of the Code Enforcement complaint that they filed with the Parish in September 2017. It is undisputed that a prior code complaint, filed anonymously in 2013,

---

[24] Beeler v. Rounsavall, 328 F.3d 813, 817 (5th Cir. 2003).
[25] Porter v. Valdez, 424 F. App'x 382, 388 (5th Cir. 2011).

regarding the Sortors' property had previously been addressed and closed by the Parish. While Defendants believe the prior complaint was filed by the Marys, the Marys dispute this. When the Marys filed their 2017 code complaint, the Parish's response indicated that it had previously investigated the complaint and found there was no violation of Parish ordinances. Plaintiffs complain that the "investigation" of the 2013 complaint amounted to an email to Paul Carroll to which he inaccurately responded that no code violation existed on the Sortors' property. They further complain that Defendants refuse to give their 2017 complaint a case number or make an official decision that could be appealed.

Defendants move for summary judgment on this claim, arguing that they are entitled to qualified immunity.[26] Even assuming, without deciding, that Plaintiffs have established a violation of a clearly established constitutional right, this Court cannot say that Defendants acted unreasonably under the circumstances. "'Under the qualified immunity standard, government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[27] "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[26] Plaintiffs argue that such a motion is premature and that they should be afforded a fair opportunity for discovery. However, Plaintiffs have not identified any particular discovery that they need to respond. Further, even taking the facts in a light most favorable to Plaintiffs, summary judgment granting qualified immunity is appropriate.

[27] Thompson v. City of Starkville, Miss., 901 F.2d 456, 468–69 (5th Cir. 1990) (quoting Elliott v. Perez, 751 F.2d 1472, 1477 n.13 (5th Cir.1985)).

constitutional rights of which a reasonable person would have known."[28] This Court cannot say that Defendants' actions, in refusing to consider a duplicative code enforcement complaint, are unreasonable or that they should have known that such an action would violate clearly established rights. Defendants acted within their discretion in refusing to consider the duplicative complaint. Accordingly, Defendants are entitled to qualified immunity on Plaintiffs' First Amendment retaliation claims against them in their individual capacity.

## **CONCLUSION**

For the foregoing reasons, the Motion is GRANTED, and Plaintiffs' claims for equal protection and retaliation against Defendants in their individual capacities are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 25th day of March, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[28] *Id.*